## DECLARATION

I, James R. Rae, Task Force Officer with the Drug Enforcement Administration (DEA), Greensboro, North Carolina, hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following information is true and correct to the best of my knowledge, information and belief:

1. I am a federal law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21, United States Code.

2. I have been a Task Force Officer with DEA since April 2018, and am currently assigned to the Greensboro Resident Office. I hold a bachelor's degree from the University of North Carolina at Charlotte in Criminal Justice. I have been a sworn law enforcement officer with the Forsyth County Sheriff's Office (FCSO) since August 2012. I have worked in the Field Services Division - Patrol Section and Community Policing, Investigative Services Division - Criminal Investigation Section. Currently, I am with the Special Investigations Division as a Task Force Officer with DEA.

3. I have training in detecting and investigating crimes, as well as collecting and preserving evidence. I have taken several advanced criminal investigation courses that include Police Law Institute, Death Investigation, Homicide Investigations, Interview and Interrogation, Special Victims Investigations, Statement Analysis, and Task Force Officer Training. I have investigated cases of sexual assault, homicide, and narcotics violation including the sale and distribution of illegal narcotics, along with other felony crimes where

GOVERNMENT EXHIBIT A

suspects were arrested, tried and convicted in district and superior court. I am a sworn law enforcement officer and have the authority to investigate criminal offenses, seize evidence and arrest persons responsible for committing those crimes.

4. Through my training and experience, I am familiar with the appearance, packaging, manufacturing, sale, and distribution of controlled substances. I am also familiar with the persons, practices, and customs involved in the possession, manufacturing, sale, and delivery of controlled substances in and around Forsyth County, NC.

5. The facts set forth in this Declaration are based on my own personal knowledge and experience, and information provided by other law enforcement officers.

6. This declaration is submitted in support of a Verified Complaint of Forfeiture for $34,900.00 in U.S. Currency seized on May 12, 2020, from Ashad Jamal STANBACK in Winston-Salem, North Carolina. As set forth herein, there is probable cause to believe the $34,900.00 in U.S. currency is subject to seizure and forfeiture pursuant to Title 18, United States Code, Section 981, and Title 21, United States Code, Section 881.

7. On May 12, 2020, Deputy B. Jones with the Forsyth County Sheriff's Office (FCSO) Highway Interdiction Unit was monitoring traffic in a marked FCSO vehicle on Old Hollow Road near the intersection of Phelps Circle, Winston-Salem, North Carolina. Deputy Jones and other personnel from that unit established a surveillance point in that area due to high amount of narcotics being transported between Forsyth County and Stokes County.

8. At approximately 11:37 a.m., Deputy Jones observed a white Volkswagen CC Sport passenger vehicle pass his location at the intersection of Phelps Circle and Old Hollow Road. When the vehicle passed, he observed the occupants attempting to conceal their identity by not looking at the deputy and staying behind the B pillar of the vehicle. Once the vehicle passed, Deputy Jones observed a heavily faded temporary license plate displayed. Due to both of those observations, Deputy Jones entered into traffic to investigate further. Deputy Jones observed the vehicle make several abrupt traffic violations, including passing the vehicle in front of them in a no passing zone, as indicated by a solid yellow divider line. Deputy Jones believed this was another attempt to avoid detection by utilizing other vehicles as concealment. Deputy Jones caught up to the vehicle and conducted a traffic stop. The vehicle pulled into the Speedway Gas Station located at 566 Old Hollow Road, Winston-Salem, North Carolina.

9. As Deputy Jones approached the passenger side of the vehicle he detected the strong odor of aromatics air deodorizers commonly used to mask the odor of narcotics, and observed a firearm and loaded magazine on the dashboard. While informing the driver of the reason for the stop, Deputy Jones observed what appeared to be previously-consumed marijuana cigars in the center console, and saw the passenger attempting to conceal a drawstring backpack beneath his legs.

10. The driver of the vehicle explained his erratic driving behavior was to avoid colliding with the vehicle before him, and that he had recently been involved in a collision. The driver of the vehicle was identified as J.L.

11. Deputy Jones advised the occupants of his observations and he had probable cause to search the vehicle based on the presence of marijuana. J.L. informed Deputy Jones he was in possession of marijuana, and provided a ¼ ounce plastic bag containing marijuana from his front left pants pocket.

12. Deputy Jones requested J.L. and the passenger, identified as Ashad Jamal STANBACK, to exit the vehicle.

13. Once Corporal C.N. McKnight with the FCSO arrived on scene, Deputy Jones conducted a probable cause search of the vehicle, and observed marijuana residue in the vehicle, and numerous empty wrappers for cigar rolling papers. On the front passenger seat was the aforementioned drawstring backpack that STANBACK was attempting to conceal beneath his legs. Inside the backpack was a taped-shut vacuum-sealed bag, a loaded handgun magazine, and loose marijuana residue. The vacuum-sealed bag contained marijuana and nine individually-wrapped, rubber-banded stacks of U.S. currency. Inside the center console were two zipper bags labeled, "Stoner Patch Dummies." Both packages contained THC edible gummies.

14. Based on the amount of U.S. currency located, Deputy Jones requested that STANBACK come to his patrol vehicle for questioning. STANBACK stated, "I just got my money in there." STANBACK raised his hands, and emphasized he was not a drug trafficker. When asked about the original position of the firearm that Deputy Jones observed on the dashboard of the vehicle prior to the traffic stop, STANBACK stated it was "open carried," and continued to raise his hands and stated, "I promise you." When asked what he did for work, STANBACK replied, "What I do for work – I do construction

work." Deputy Jones inquired if he possessed any proof of payment or employment. STANBACK stated he was on the way to buy a car, followed by him raising his hands and stating, "Honestly." When asked where he was going to purchase the vehicle, STANBACK expressed his uncertainty and did now know what type of vehicle he was going to purchase. When asked why he had packaged the U.S. currency in a vacuum-sealed, odor-concealing bag, he advised it was a Food Lion food savor bag. STANBACK further stated he had resealed the bag and concealed it inside of his backpack because he "didn't want nobody to take nothing from it," and that it was his savings he kept in his room. When asked who lived with him, STANBACK stated it was only him and his mother. Deputy Jones asked about the marijuana residue inside the vacuum-sealed bag and backpack, and STANBACK replied, "I smoke weed and that's what I do." Deputy Jones then inquired about STANBACK's employment in construction, and asked where the business was located. He replied, "I work for a, uh, a plumbing….like roofing company. Gutters, I clean gutters." STANBACK was unable to provide the name of the business or his boss. Due to his improbable explanation of employment, STANBACK was asked how he came in possession of his savings in the vacuum-sealed bag, and STANBACK stated he had withdrawn the money from the bank, but then stated, the "migo" who employed him, "paid him under the table."

15. After speaking with STANBACK, Deputy Jones approached J.L. and inquired about the THC edibles that were found. J.L. admitted to possessing the THC edibles.

16. Deputy Jones conducted a records check of law enforcement databases and learned that STANBACK was arrested in 2017 for marijuana possession. The charges were dismissed.

17. Deputy Jones called me and briefed me on the traffic stop and related evidence as described above. I was advised by DEA Group Supervisor B. Bridgeford the situation met the threshold for adoption.

18. Deputy Jones spoke with STANBACK further and asked about the bag that contained the U.S. currency and how much marijuana was previously stored in the bag; STANBACK admitted it contained one-quarter pound of marijuana.

19. Deputy Jones informed STANBACK that the DEA would adopt the U.S. currency seizure, explained to him the events that would follow the seizure, and the disposition of the U.S. currency. STANBACK was provided a copy of the report number and my contact information.

20. J.L. was issued traffic citations as well as a citation for the THC edibles.

21. The total amount of narcotics seized was 6.76 grams of marijuana and 30.43 grams of THC edibles.

22. Pursuant to FCSO's policy, the U.S. currency was seized and placed into storage at Beaty Center for Evidence Management pending transfer to DEA Greensboro Resident Office. The U.S. currency was then transferred to the bank for an official count and determined to be $34,900.00. On June 16, 2020, a check made out to the U.S. Marshals was sent via Fedex to the U.S. Marshals. The check was deposited to the U.S. Marshal Service Seized Assets Deposit Fund.

23. DEA adopted the seizure of $34,900.00 in U.S. currency and began administrative forfeiture proceedings. Notice of the forfeiture proceeding was published on an official government internet site (www.forfeiture.gov) from July 6, 2020, to August 4, 2020. On July 17, 2020, DEA received a claim to the U.S. currency defendant current from Ashad STANBACK. Because a claim was filed, the administrative process was terminated and the seizure was referred to the United States Attorney's Office for judicial forfeiture.

## Conclusion

24. Based on the foregoing, I maintain there is probable cause to believe that the $34,900.00 in U.S. currency was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., or represents proceeds traceable to such an exchange, and is therefore subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

This the 15 day of October, 2020.

James R. Rae
Task Force Officer
Drug Enforcement Administration